SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Co-Counsel for Plaintiffs*

JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
JOEY GILBERT LAW
405 Marsh Avenue
Reno, Nevada 89509
Tel: (775) 284-7700
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
*Co-Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JELANI GARDNER, an individual, JELANI GARDNER as Guardian of minor child J. DOE, on his behalf, | Case No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| SAGE RIDGE SCHOOL, a domestic nonprofit corporation, DOES I-XX and ROE entities I-XX. | **JURY DEMAND** |
| Defendants. | |

COME NOW, Plaintiffs, by and through their attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT LAW, and hereby alleges and complain against Defendants as follows:

/ / /

/ / /

1

## INTRODUCTION

1.      This action involves egregious acts racial discrimination against Plaintiffs, father and son, at Sage Ridge School, after Jelani Gardner was recruited by Sage Ridge to relocate to Northern Nevada and become their Head Basketball Coach.

2.      Plaintiff Jelani Gardner, with an impeccable career as a basketball coach and mentor, along with over a decade of playing basketball professionally, was an extraordinary addition to the Sage Ridge school, whereby Defendants knew that they would never have someone of this caliber at their train at their facility.

3.      The facts and circumstances delineated herein are particularly egregious in light of the racially charged actions taken by Defendants, besmirching Plaintiffs' reputations as delineated in detail herein.

## JURISDICTION AND VENUE

1.      This court has Federal subject matter jurisdiction under 42 U.S.C. § 1983 and 1988, as amended, the Americans with Disabilities Act ("**ADA**" or "**Act**"), 42 U.S.C. § 12111 et. seq., § 12203, § 12132, Title IX of the Education Amendments of 1972, 20 U.S.C § 1681 *et. seq.*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 28 U.S.C § 1331, 1343.

2.      Venue is proper under 28 U.S.C. § 1391 in the District of Nevada, Washoe County, because this claim arose therein.

3.      This Court has supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Plaintiffs' Federal claims.

4.      All of the acts or failures to act herein were duly performed by and attributable to all Defendants, each acting as agent, employee, or under the direction and/or control of the

2

others. Said acts or failures to act were within the scope of said agency and/or employment and

each of the Defendants and ratified the acts and omissions by the other Defendants. Whenever

and wherever reference is made in this Complaint to any acts by Defendants, such allegations

and references shall also be deemed to mean the acts of each of the Defendants acting

individually, jointly or severally.

5.      The true names and capacities, whether individual, corporate, associate, or

otherwise, of Defendants DOES I through XX, and ROE CORPORATIONS I through XX,

inclusive, are unknown to Plaintiffs who therefore sues said Defendants by such fictitious names.

Plaintiff is informed and believes and thereon alleges that each of the Defendants designated

herein as a DOE or ROE CORPORATION is responsible in some manner for the events and

happenings herein referred to and damages caused proximately thereby to Plaintiff  as herein

alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true

names and capacities of said Defendants DOES I through XX and/or ROE CORPORATIONS I

through XX, when same have been ascertained by Plaintiff together with appropriate charging

allegations, and to join such Defendants in this action.

**PARTIES**

6.      Plaintiff, JELANI GARDNER (hereinafter "Gardner"), is currently and at all

times relevant herein, a resident of the County of Washoe, State of Nevada, who brings specific

allegations against Defendants individually and independently from asserting allegations on

behalf of his minor child, J. DOE.

7.      Plaintiff GARDNER, is currently and at all times relevant herein, a resident of the

County of Washoe, State of Nevada, who brings this action on behalf of his minor child J. Doe

(hereinafter DOE).  DOE at all times complained of herein, was and is a minor child.

8.      The true names of minor J. Doe are known to Defendants but will be formally

provided to Defendants and their Counsel.

9.     Each of the Defendants caused, and is responsible for, the unlawful conduct directed towards DOE. Each of the Defendants by participating in the unlawful conduct or acting jointly and in concert with others who did, authorized, acquiesced, condoned, and approved the unconstitutional conduct by failing to take action to prevent said unconstitutional conduct which resulted in the, mental and emotional distress, physical abuse, humiliation and destruction of DOE's life.

10.    Defendant, SAGE RIDGE SCHOOL (hereinafter "Sage Ridge"), is a 501(c)(3) nonprofit corporation domesticated in Nevada having and exercising full control, power, and oversight over the operations and activities at its schools, over its programs and its administrators, teachers, and other staff members, is located in the County of Washoe.

11.    Upon information and belief, Sage Ridge receives federal funding in the form of tax exemptions, which have been found by the United States Supreme Court to be the equivalent of a cash grant.  *Reagan v. Taxation with Representation*, 461 U.S. 540, 544 (1983) ("A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income . . . .").

12.    Each of the Defendants caused, and is responsible for, the unlawful conduct directed towards DOE. Each of the Defendants by participating in the unlawful conduct, or acting jointly and in concert with others who did, authorized, acquiesced, condoned, and approved the unconstitutional conduct by failing to take action to prevent said unconstitutional conduct which resulted in the humiliation and destruction of DOE's life and livelihood.

13.    Wherever reference is made in this Complaint to any act by Defendants, it is alleged that each Defendant was the agent of the others. Defendants were acting within the course and scope of this agency, and all acts allegedly committed by any one of them shall also

be deemed to mean the acts and failures to act of each Defendant individually, jointly or severally.

**PRELIMINARY STATEMENT**

14.     Plaintiffs collectively, bring the foregoing action in accordance with the Federal and State statutes as delineated herein.

15.     Title IX Amendments of 1972, 20 U.S.C § 1681 *et. seq.*, mandates Defendants have a duty to prohibit discriminatory acts and expressions carried out on the basis of sex, and to protect DOE and other similarly situated students from such prohibited conduct.

16.     Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et. seq.*, mandates that Defendants prohibit discriminatory conduct towards another based on a person's race, color or national origin, and to protect Gardner and DOE and other similarly situated employees and students from such prohibited conduct.

17.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* mandates that Sage Ridge prohibit employment discrimination on the basis of race, color, religion, sex or national origin, and protect Gardner and other similarly situated employees from such prohibited conduct.

18.     The Americans with Disabilities Act ("**ADA**" or "**Act**"), 42 U.S.C. § 12111 et. seq., § 12203, § 12132 mandates that Sage Ridge provide employees with disabilities equal access to all benefits and privileges of employment that are available to similarly situated employees without disabilities.

19.     Defendants were negligent and acted under color of state law when they breached and failed in the performance of their duties, and actively discriminated against both Gardner and Doe on the basis of their race, sex and, in Gardner's case, his disability.

20.     Defendants' negligent actions, and their deliberate indifference to Gardner and

DOE, shocks the conscience and demonstrates a pattern of discriminatory conduct and hostile environment found within Sage Ridge.

## ADMINISTRATIVE REMEDIES

21.     Gardner has complied with any and all administrative prerequisites for filing a civil action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the ADA.

22.     On July 18, 2024, Gardner timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

23.     Gardner exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Gardner and his counsel received a Right-to-Sue letter from the San Francisco District Office of the EEOC on July 19, 2024.  *See* a true and correct copy of the Dismissal and Notice of Rights, attached hereto as **Exhibit 1**.

## FACTUAL ALLEGATIONS

24.     On April 17, 2023, Gardner signed an employment contract with Sage Ridge agreeing to employment as the Assistant Athletic Director and as head of Sage Ridge's basketball program.  Gardner was also the head boys' basketball coach.

25.     Prior to signing an employment contract, Gardner informed Sage Ridge's Head of School, Dr. Ginger Hovenic ("Dr. Hovenic"), that he was suffering from an ongoing medical condition including kidney failure and would require an accommodation in the form of working mostly remotely as he received dialysis daily.

26.     Dr. Hovenic agreed to this accommodation and the parties moved forward with Gardner's employment with Sage Ridge.

27.     Gardner relocated his family from Los Angeles, California to Reno, Nevada for this new employment opportunity based on representations and agreements the Parties entered

6

into.

28.     The employment contract was for a four-year period, to begin with the 2023-2024 school year.

29.     On or around June 10, 2023, prior to the beginning of the school year, Gardner met with Dr. Hovenic to discuss expectations for Gardner's employment position.  During this meeting, Dr. Hovenic explained to Gardner that she had determined that the school's acceptable racial composition was a quota of 80% white students and 20% black students.  Dr. Hovenic asserted to Gardner that such a ratio would facilitate community acceptance of the basketball team and of Gardner, as a black male.

30.     Gardner and his wife enrolled their minor son, DOE, in Sage Ridge for the 2023-2024 school year.  DOE was friends with another freshman who was also a black male, E.O.

31.     In the beginning of September, 2023, DOE and E.O. went to the house of a female Sage Ridge student, S.N.  There was another female student in attendance at the home, L.S.  While the boys were at the house, the female students began talking about sex.  The boys felt uncomfortable about the discussions and left the house.

32.     Around this same time, DOE and E.O. were picked up in a car by K.C .

33.     There was a female Sage Ridge student in the vehicle, M.G., with DOE, E.O. and their friend.  M.G. later claimed she had a video that contained sexually explicit content taken during this car ride.  This statement was a lie as no such thing occurred to merit the existence of such a video.

34.     After these two incidents, but still in September, 2023, the entire ninth and tenth grade classes at Sage Ridge all attended an outdoor education trip, where the children would be camping.  The students that attended were accompanied by teachers and adult chaperones.

35.     During the ride to the location, a white male student told a teacher that E.O. stated

7

that "he would rape him until he could not walk."

36.     Also, during the ride, a teacher, Mr. Sloyan, asked DOE how to "throw up the Blood hand sign."  This same teacher then reported that DOE was throwing up gang signs during the ride.

37.     The first night of the trip, the two female students, S.N. and L.S. falsely accused DOE and E.O. of attempting to enter their tent during the night.   DOE and E.O. were reprimanded by chaperones.

38.     In response, Mr. Sloyan removed DOE's and E.O.'s tents from the group, placing them about twenty feet away from the group.   Essentially, segregating the only two black students from the group of white students.

39.     The next day, the group of students went hiking.  Mr. Sloyan forced DOE to walk at the back of the group as some sort of punishment.

40.     At one point, the students were on the beach and DOE was singing song lyrics, when a female student accused him of making sexually inappropriate remarks to her.   This female student accused DOE in front of all of the students present and made him feel embarrassed and extremely uncomfortable.

41.     Upon hearing this female student's false accusation, Mr. SLoyan chaperones on the trip pulled DOE to the side and questioned him regarding the alleged sexually explicit comments.   These Mr. Sloyan and the other adults also accused DOE of stating that he would rape a male student.   DOE denied all of these accusations.   The teachers and/or chaperones told DOE that they knew and trusted the students that had made the accusations against DOE.

42.     After DOE was interrogated, the students told DOE that they were going to continue reporting him for these false allegations.   That same night, the teachers and/or chaperones had a meeting and informed DOE that they were sending him home.  They informed

him that they believed he was guilty of all the aforementioned reports.

43.     The next morning DOE and E.O. packed up their belongings to go home.  The teachers and/or chaperones ignored them.  The students, on the other hand, were waiving at the boys and did the "Na na na na, hey hey hey, Goodbye" chant.  The teachers and/or chaperones did not stop or reprimand the white students for this behavior.

44.     DOE and E.O. returned home on a Friday.  Three white students were also sent home.  The three white students were allowed to return to school on the next Monday.  DOE and E.O. were given an informal suspension for 10 days.

45.     The white students and parents made false police reports regarding their baseless accusations.  These accusations were found to have no merit through police investigation.

46.     During Doe's and E.O.'s suspension, Sage Ridge would send emails out to all of the parents updating them on the situation and ongoing police investigation.

47.     During this time, Gardner met with Dr. Hovenic and complained about Sage Ridge's discriminatory treatment of DOE and E.O.

48.     At some point during this time, Dr. Hovenick gave Gardner's office on the school campus away to another coach.

49.     Despite being very uncomfortable with the racially motivated negative treatment of DOE and E.O., Gardner had to maintain his employment as he was the sole provider for his family.

50.     During DOE's suspension, Dr. Hovenic and her husband went to Gardner's home and suggested that Gardner remove DOE from Sage Ridge.  Gardner refused.

51.     As stated above, the police investigation cleared DOE and E.O. of any wrongdoing.  Upon receipt of the police's findings, Sage Ridge allowed the boys to go back to school.

52.    Before they returned to school, however, Dr. Hovenic insisted that Gardner and the boys, DOE and E.O. appear at a meeting with all of the "concerned" children and parents, almost all of which are Caucasian.  Dr. Hovenic forced Gardner and the boys to apologize to these "concerned" children and parents for making them feel "uncomfortable" and "unsafe."

53.    DOE was embarrassed and humiliated to return to Sage Ridge after the students' false allegations and accompanying police investigation which proved him to be innocent of said accusations.

54.    Immediately upon return, DOE was tested on material that he had not received instruction on.  The teachers refused to give DOE any extra time to catch up on the instruction he missed while on the informal suspension.

55.    Upon DOE's return to school from the informal ten-day suspension, DOE's teachers and Sage Ridge administration continued to discriminate against DOE.  DOE's teachers accused DOE of plagiarism and refused to allow him to make up any of the work he missed during the time he was improperly suspended.

56.    Ultimately, in a final act of harassment and discrimination, and likely as retaliation for Gardner's complaints regarding Sage Ridge's racially motivated treatment of the boys, Sage Ridge expelled DOE without any explanation.

57.    Sage Ridge's students, teachers and/or parents harassed and discriminated against DOE and E.O. by hypersexualizing them and making false allegations against them because of their race.  Sage Ridge ratified and assisted with this harassment and discrimination by furthering the accusations without any proof, inappropriately suspending DOE and E.O. without any evidence of wrongdoing and moving forward with a frivolous police investigation.

58.    Gardner continued in his position and coached the students that harassed DOE.

59.    Dr. Hovenic then informed Gardner that he needed to be on campus more often.

Gardner reminded her that she had given his office away, and that he had to complete lengthy dialysis each day.  Dr. Hovenic insisted that he spend more time on campus and continue to report to the current athletic director.

60.     On December 12, 2023, Gardner attended a meeting with Dr. Hovenick.  Dr. Hovenick stated to Gardner, "I don't know what black people want to be called: Black, Afro American, Colored."  Dr. Hovenic then laughed at her statement."

61.     This statement made Gardner extremely uncomfortable and inferior, especially as it took place after Sage Ridge's discriminatory treatment of DOE.

62.     On March 5, 2024, Dr. Hovenic called Gardner in for a meeting, in which she again criticized Gardner's absence from the school campus.  At this meeting, Dr. Hovenic provided Gardner with a termination letter dated February 29, 2024, informing Gardner that his last day of employment would be April 15, 2024.

63.     The termination letter included a copy of what Dr. Hovenic purported to be the employment contract between Sage Ridge and Gardner.  The contract provided by Dr. Hovenic, however, was not the actual contract agreed upon by both parties as it was suspiciously missing the language that included a monetary buyout should Gardner be terminated "without cause."

64.     Only upon notice of Gardner that the contract provided by Dr. Hovenic was not the contract he signed did Dr. Hovenic provide Gardner with a copy of the actual contract between the parties.

65.     The termination of Gardner's employment was retaliation for Gardner's complaint regarding Sage Ridge's sexual harassment and discriminatory treatment of DOE, E.O. and of Gardner based upon their race.

66.     Sage Ridge's discriminatory treatment of DOE and Gardner is in direct violation of both State and Federal law.

11

67. Both DOE and Gardner have suffered damages as a result of these violations.

**FIRST CAUSE OF ACTION**
*(Violation of Title IX – 20 U.S.C. § 1681 Et. Seq. – Plaintiff DOE)*

68. Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

69. Whereas Title IX of the Education Act mandates a duty to Sage Ridge to prohibit discriminatory conduct, and specifically discriminatory acts and expressions carried out on the basis of DOE's sex, gender identity, or sexual orientation.

70. Sage Ridge violated Title IX when it failed to prohibit the discriminatory conduct, and condone, ratify, and carry out such acts of discrimination, such as allowing the white students to hypersexualize DOE by falsely accusing him of making sexually explicit comments to female students and threatening to rape male students.

71. Sage Ridge violated Title IX when they undermined and detracted from DOE's educational experience, and created a disadvantaged and dangerous school environment and ultimately expelled DOE from Sage Ridge despite the fact that the allegations made against him were proven to be false.

72. Sage Ridge failed to mitigate the harm to DOE, despite actual knowledge and notice of the incidents and occurrences of discriminatory conduct.

73. Defendant's negligence and deliberate indifference caused harm; and DOE suffered injuries and cumulative trauma now and into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles DOE to special damages in an amount to be proven at time of trial.

74. Defendants' negligence and deliberate indifference caused harm, and DOE suffered injuries and emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future

damages, in an amount in excess of $75,000.

75.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' fees expended in prosecuting this action.

**SECOND CAUSE OF ACTION**
*(Violation of Title VI – 20 U.S.C. § 1681 Et. Seq. –DOE)*

76.     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

77.     Whereas Title VI of the Civil Rights Act mandates that Sage Ridge prohibit discriminatory conduct, and specifically, that no person shall, on the grounds of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

78.     Sage Ridge violated Title VI when it failed to prohibit the discriminatory conduct, and condone, ratify, and carry out such acts of discrimination against DOE because of his race, such as allowing the white students to hypersexualize DOE by falsely accusing him of making sexually explicit comments to female students and threatening to rape male students.

79.     Sage Ridge violated Title VI when it failed to prohibit the discriminatory conduct, and condone, ratify, and carry out such acts of discrimination against DOE because of his race, such as allowing teachers to do the following: 1) ask DOE how to perform gang signs, 2) accuse DOE of flashing gang signs, 3) segregate DOE and E.O. from the white students during the field trip, 4) send DOE home from the field trip based upon the white students' false accusations, 5) fail to provide proper instruction to DOE upon return from suspension and accuse DOE of plagiarism.

80.     Sage Ridge violated Title VI when it discriminated against DOE because of his race when it suspended DOE based upon baseless accusations made by white students.  Sage

Ridge also violated Title VI when it discriminated against DOE because of his race when Dr. Hovenic asked Gardner to remove DOE from Sage Ridge, and upon Gardner's refusal, ultimately expelled DOE from Sage Ridge.

81.     Sage Ridge violated Title VI when it discriminated against DOE because of his race when Dr. Hovenic insisted that DOE and Gardner appear at a meeting in front of the mostly white students and parents that had falsely accused DOE of any wrongdoing and forced Gardner and DOE to apologize for making them feel "uncomfortable" and "unsafe."

82.     Sage Ridge failed to mitigate the harm to DOE, despite actual knowledge and notice of the incidents and occurrences of discriminatory conduct.

83.     Defendant's negligence and deliberate indifference caused harm; and DOE suffered injuries and cumulative trauma now and into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles DOE to special damages in an amount to be proven at time of trial.

84.     Defendants' negligence and deliberate indifference caused harm, and DOE suffered injuries and emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future damages, in an amount in excess of $75,000.

85.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' fees expended in prosecuting this action.

## THIRD CAUSE OF ACTION
### (Violation of Title VI – 20 U.S.C. § 1681 Et. Seq. – Plaintiff Gardner)

86.     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

87.     Whereas Title VI of the Civil Rights Act mandates that Sage Ridge prohibit discriminatory conduct, and specifically, that no person shall, on the grounds of race, color or

14

national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

88.     Sage Ridge violated Title VI when it failed to prohibit the discriminatory conduct, and condone, ratify, and carry out such acts of discrimination against Gardner because of his race, such as allowing the white students to hypersexualize his minor child, while Gardner was an employee of Sage Ridge, by falsely accusing him of making sexually explicit comments to female students and threatening to rape male students.

89.     Sage Ridge violated Title VI when it failed to prohibit the discriminatory conduct, and condone, ratify, and carry out such acts of discrimination against Gardner because of his race, such as allowing teachers to do the following to his minor child, while Gardner was an employee of Sage Ridge: 1) ask DOE how to perform gang signs, 2) accuse DOE of flashing gang signs, 3) segregate DOE and E.O. from the white students during the field trip, 4) send DOE home from the field trip based upon the white students' false accusations, 5) fail to provide proper instruction to DOE upon return from suspension and accuse DOE of plagiarism.

90.     Sage Ridge violated Title VI when it discriminated against Gardner because of his race when it suspended his minor child, while Gardner was an employee of Sage Ridge, based upon baseless accusations made by white students.  Sage Ridge also violated Title VI when it discriminated against Gardner because of his race when Dr. Hovenic asked him to remove DOE from Sage Ridge, and upon Gardner's refusal, ultimately expelled DOE from Sage Ridge during Gardner's employment with Sage Ridge.

91.     Sage Ridge violated Title VI when it discriminated against Gardner because of his race when Dr. Hovenic insisted that DOE and Gardner appear at a meeting in front of the mostly white students and parents that had falsely accused DOE of any wrongdoing and forced Gardner and DOE to apologize for making them feel "uncomfortable" and "unsafe."

92.     Sage Ridge violated Title VI when it discriminated against Gardner because of his race when Dr. Hovenic stated to Gardner, "I don't know what black people want to be called: Black, Afro American, Colored." Dr. Hovenic then laughed at her statement.

93.     Sage Ridge violated Title VI when it discriminated against Gardner by terminating his employment as retaliation for his complaints of Sage Ridge's harassment and discrimination of DOE and Gardner based upon their race.

94.     Sage Ridge failed to mitigate the harm to Gardner, despite actual knowledge and notice of the incidents and occurrences of discriminatory conduct.

95.     Sage Ridge's negligence and deliberate indifference caused harm; and Gardner suffered injuries and cumulative trauma now and into the future that will require medical and educational analyses, evaluations, and treatments, the cost of which entitles Gardner to special damages in an amount to be proven at time of trial.

96.     Sage Ridge's negligence and deliberate indifference caused harm, and Gardner suffered injuries and emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future damages, in an amount in excess of $75,000.

97.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' fees expended in prosecuting this action.

**<u>FOURTH CAUSE OF ACTION</u>**
*(Violation of Title VII – 20 U.S.C. § 1681 Et. Seq – Plaintiff Gardner)*

98.     Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

99.     Sage Ridge conducted itself with malice and/or reckless indifference to Gardner's statutory rights under Title VII of the Civil Rights Act of 1964.

16

100.    Gardner is an African American male, whereby the subject alleged discrimination is directly associated with his race.

101.    Sage Ridge discriminated against Gardner due to his race by allowing the white students to hypersexualize his minor child, while Gardner was an employee of Sage Ridge, by falsely accusing him of making sexually explicit comments to female students and threatening to rape male students.

102.    Sage Ridge discriminated against Gardner due to his race by allowing teachers to do the following to his minor child, while Gardner was an employee of Sage Ridge: 1) ask DOE how to perform gang signs, 2) accuse DOE of flashing gang signs, 3) segregate DOE and E.O. from the white students during the field trip, 4) send DOE home from the field trip based upon the white students' false accusations, 5) fail to provide proper instruction to DOE upon return from suspension and accuse DOE of plagiarism.

103.    Sage Ridge discriminated against Gardner due to his race when it suspended his minor child, while Gardner was an employee of Sage Ridge, based upon baseless accusations made by white students.  Sage Ridge also discriminated against Gardner because of his race when Dr. Hovenic asked him to remove DOE from Sage Ridge, and upon Gardner's refusal, ultimately expelled DOE from Sage Ridge during Gardner's employment with Sage Ridge.

104.    Sage Ridge discriminated against Gardner due to his race when Dr. Hovenic insisted that DOE and Gardner appear at a meeting in front of the mostly white students and parents that had falsely accused DOE of any wrongdoing and forced Gardner and DOE to apologize for making them feel "uncomfortable" and "unsafe."

105.    Sage Ridge discriminated against Gardner due to his race when Dr. Hovenic stated to Gardner, "I don't know what black people want to be called: Black, Afro American, Colored."  Dr. Hovenic then laughed at her statement.

106.    Sage Ridge discriminated against Gardner due to his race by terminating his employment as retaliation for his complaints of Sage Ridge's harassment and discrimination of DOE and Gardner based upon their race.

107.    Sage Ridge is responsible for the acts and omissions of its employees.

108.    Gardner suffered severe emotional, psychological, vocational and financial damages as a proximate cause of Sage Ridge's conduct.

109.    Sage Ridge's negligence and deliberate indifference caused harm, and Gardner suffered injuries and emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Plaintiffs claim both past and future damages, in an amount in excess of $75,000.

110.    Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover against Defendants for all reasonable attorneys' fees expended in prosecuting this action.

**FIFTH CAUSE OF ACTION**
*(Violation of ADA – 20 U.S.C. § 1681 Et. Seq. – Plaintiff Gardner)*
*(Plead in the Alternative to the Third and Fourth Causes of Action)*

111.    Plaintiffs repeat and re-allege all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

112.    Sage Ridge is a public entity subject to Title I and Title V of the ADA.

113.    Sage Ridge is responsible for the acts and omissions of its employees.

114.    Sage Ridge violated the ADA by no longer accommodating Gardner's disability after agreeing to do so upon hiring.

115.    Sage Ridge was aware of Gardner's disability, kidney failure, and agreed to the reasonable accommodation of allowing Gardner to work from home as he obtained dialysis daily.

116.    Sage Ridge then took adverse action and retaliated against Gardner by

18

complaining that Gardner needed to be on campus more and ultimately terminating Gardner for this reason.

117.     All such wrongful conduct and retaliation was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

118.     Gardner suffered severe emotional, psychological, vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages up to three hundred thousand U.S. Dollars ($300,000).

119.     Gardner is entitled to reasonable attorney fees.

120.     In addition to reasonable attorney fees, Plaintiff is entitled to reasonable expert fees.

## SIXTH CAUSE OF ACTION
### *(Violation of Nevada Statutory Protections – Plaintiff Gardner)*

121.     Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

122.     Defendant is an "employer" within the meaning of NRS 613.310.

123.     NRS 613.330 makes it unlawful for an employer to discriminate against an employee with respect to the person's compensation, terms, conditions or privileges of employment, because of the employee's race, color and/or disability. Sage Ridge's conduct as detailed herein, was in fact illegal. Gardner was subjected to discriminatory practices, including without limitation, retaliatory and adverse actions affecting his compensation, terms, conditions or privileges of employment because of his race, color and/or disability.

124.     As a direct and proximate result of Defendant's violation of NRS 613.330, Plaintiff suffered lost wages, lost benefits, lost status, lost reputation, lost future earnings, lost employment opportunities, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial. Plaintiff seeks all legal and equitable remedies available at law.

125.    All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

## SEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress – DOE)

126.    Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates them by reference as though fully set forth herein.

127.    Sage Ridge ratified the actions of its students falsely accusing DOE of making sexual threats to them and filing false police reports against DOE.

128.    Sage Ridge ratified the actions of its teachers asking DOE to show them how to make gang signs, accusing DOE of "throwing" gang signs during a field trip, segregating DOE from the rest of the students during the field trip and ultimately disciplining DOE for the other students' by sending DOE home from the field trip early.

129.    Sage Ridge wrongly suspended DOE for ten days based on students' false allegations and false police reports, Sage Ridge then forced DOE to appear with Gardner before a room full of the white students who falsely accused him and their parents and insisted that DOE apologize to them for making them feel "unsafe" and "uncomfortable" even though DOE was cleared of any wrongdoing.

130.    Sage Ridge's acts and omissions described herein were extreme and outrageous and intentionally conducted to cause emotional distress to DOE.

131.    As a direct and proximate result of the malicious and intentional conduct by various Defendants, whose acts were directed and ratified by Sage Ridge, DOE suffered, and will continue to suffer, damages, including but not limited to such severe and extreme emotional distress manifested as great humiliation, embarrassment, shame, and other pain and suffering, in

an amount in excess of $75,000.00.

132.     The intentional conduct of the Sage Ridge was so despicable, oppressive, malicious, and engaged in with such conscious disregard for DOE's rights and safety that punitive damages in excess of $75,000.00 are warranted.

133.     As a direct, proximate and foreseeable result, DOE suffered damages in an amount according to proof at the time of trial.

134.     Accordingly, Defendants and each of them are liable to DOE for compensatory damages, punitive damages, and attorney's fees and costs.

### EIGHTH CAUSE OF ACTION
*(Intentional Infliction of Emotion Distress – Gardner)*

135.     Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates them by reference as though fully set forth herein.

136.     Dr. Hovenic made discriminatory comments towards Gardner based upon his race and/or color, such as the school's acceptable racial composition was a quota of 80% white students and 20% black students.

137.     Dr. Hovenic made discriminatory comments towards Gardner based upon his race and/or color, such as "I don't know what black people want to be called: Black, Afro American, Colored." Dr. Hovenic then laughed at her statement.

138.     Dr. Hovenic insisted that before DOE returned to school, Gardner and DOE appear before a room full of the white students who falsely accused DOE and their parents and apologize to them for making them feel "unsafe" and "uncomfortable" even though DOE was cleared of any wrongdoing.

139.     Sage Ridge's acts and omissions described herein were extreme and outrageous and intentionally conducted to cause emotional distress to Gardner.

140.    As a direct and proximate result of the malicious and intentional conduct by various Defendants, whose acts were directed and ratified by Sage Ridge, Gardner suffered, and will continue to suffer, damages, including but not limited to such severe and extreme emotional distress manifested as great humiliation, embarrassment, shame, and other pain and suffering, in an amount in excess of $75,000.00.

141.    The intentional conduct of the Sage Ridge was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Gardner's rights and safety that punitive damages in excess of $75,000.00 are warranted.

142.    As a direct, proximate and foreseeable result, Gardner suffered damages in an amount according to proof at the time of trial.

143.    Accordingly, Defendants and each of them are liable to Plaintiff for compensatory damages, punitive damages, and attorney's fees and costs.

### PRAYER FOR JUDGMENT AND RELIEF

**Wherefore, Plaintiffs pray for judgement against Defendants as follows:**

1.    For appropriate declaratory relief regarding the unconstitutional and unlawful acts of Defendant;

2.    Actual damages in the form of back pay and front pay for Gardner;

3.    For appropriate compensatory damages in an amount to be determined at trial;

4.    For punitive damages in an amount to be determined at trial;

5.    For appropriate equitable relief against Defendant as allowed by law, including the enjoining and permanent restraining of these violations, and direction to Defendant to take such affirmative action necessary to ensure that the effects of the unconstitutional and unlawful employment practices are eliminated and do not continue to affect Plaintiffs or others' employment opportunities;

6.   For an award of reasonable attorney fees and costs as permitted under applicable state and federal statutory law.

7.   For such other and further relief to which Plaintiffs may show themselves justly entitled.

**DATED** this 6th day of September, 2024.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
*Attorneys for Plaintiffs*

**JOEY GILBERT LAW**

*/s/ Joseph S. Gilbert*
JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
405 Marsh Avenue
Reno, Nevada 89509
*Attorneys for Plaintiffs*
