**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| JELANI GARDNER, an individual, JELANI GARDNER, as guardian of minor child J. Doe, on his behalf,<br><br>Plaintiffs,<br><br>v.<br><br>SAGE RIDGE SCHOOL, a Domestic Non-profit Corporation, DOES I-XX and ROE Entities I-XX,<br><br>Defendants. | Case No. 3:24-CV-00403-CLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE WITH LEAVE TO AMEND**<br><br>[ECF No. 9] |

Plaintiffs Jelani Gardner, in his individual capacity ("Gardner"), and Jelani Gardner on behalf of his minor child J. Doe ("Doe"), bring this action against Defendant Sage Ridge School's ("Sage Ridge") for alleged violations of various state and federal civil rights statues and for claims of intentional inflection of emotional distress under Nevada state law. (ECF No. 1.) Currently pending before the Court is Sage Ridge's Motion to Dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6). (ECF No. 9.) Plaintiffs opposed, (ECF No. 15), and Sage Ridge replied, (ECF No. 16.) For the reasons stated below, the Court grants Sage Ridge's motion to dismiss without prejudice and with leave to amend.

**I.     BACKGROUND[1]**

On April 17, 2023, Gardner signed an employment contract with Sage Ridge to become the school's Assistant Athletic Director, Head of Sage Ridge's Basketball Program, and Head Coach of the Boys' Basketball Team for a four-year period beginning with the 2023-2024 school year. (ECF No. 1 at 6.) Sage Ridge is a 501(c)(3) nonprofit corporation and independent school in Reno, Nevada. (ECF No. 9 at 3.)

Gardner alleges that prior to signing the employment contract, he informed Sage Ridge's Head of School, Dr. Ginger Hovenic, ("Dr. Hovenic") that he suffers from kidney failure and requires an accommodation in the form of working mostly remotely to receive dialysis on a daily basis. (ECF No. 1 at 6.) Gardner alleges Dr. Hovenic agreed to the

---

[1]     The facts as stated herein are taken from Plaintiffs' Complaint, (ECF No. 9).

accommodation. (*Id.*) During an initial meeting to discuss employment expectations, Gardner alleges Dr. Hovenic discussed the school's racial "quota of 80% white students and 20% black students" which would "facilitate community acceptance of the basketball team and of Gardner, as a black male." (*Id.* at 7.)

Soon after, Gardner enrolled his minor son, Doe, a black male, as a freshman at Sage Ridge. (*Id.*) Doe alleges that within the first few months of his time at Sage Ridge, he was repeatedly subjected to discrimination based on his race and gender. He alleges he was shown sexually explicit content and subject to uncomfortable conversations about sex by other students outside of school properly. (*Id.*)

Doe also alleges that during an outdoor education field trip in September of 2023, one Sage Ridge teacher asked Doe to "through up the Blood hand sign" and then reported Doe for "throwing up gang signs." (*Id.* at 8.) During the same trip, a white male student accused Doe of stating "he would rape him until he could not walk." (*Id.*) Doe further alleges he was falsely accused of attempting to enter the tent of two female students at night and was then reprimanded by chaperones by "segregating the only two black students from the group of white students." (*Id.*) The following day, Doe alleges he was forced to walk at the back of the group as punishment. (*Id.*) Doe alleges he was also falsely accused of making sexually inappropriate remarks and was "embarrassed and extremely uncomfortable." (*Id.*) Doe was sent home after the teachers "interrogated" him and stated they "trusted the students who made the accusations against Doe." (*Id.*) Doe was sent home along with another black student and three white students. (*Id.* at 9.) Subsequently, Doe was put on a ten-day informal suspension while the three white students were allowed to return to school the next Monday. (*Id.*)

Soon after, Plaintiffs allege the white students and parents made false police reports regarding the events of the field trip. (*Id.*) Following an investigation, the police found the claims to be meritless. (*Id.*) Gardner met with Dr. Hovenic and complained about the discriminatory treatment of Doe. (*Id.*) Gardner alleges Dr. Hovenic gave away his on-campus office to another coach. (*Id.*) Plaintiffs allege Dr. Hovenic later came to their home

and suggested that Doe withdraw from Sage Ridge. (*Id.*)

Once the school received the findings from the police investigation, Sage Ridge allowed Doe to return to school. (*Id.*) However, Plaintiffs allege Dr. Hovenic required Gardner and Doe to meet with all of the concerned children and parents, all of whom were white, and forced Gardner and Doe to apologize for making them feel "uncomfortable" and "unsafe." (*Id.* at 10.) Gardner and Doe allege this caused them "humiliation" and "embarrass[ment]" even though the police investigation proved the accusations against Doe to be false. (*Id.*)

Following Doe's return to school, teachers refused to give him extra time to catch up on material he missed due to the informal instruction. (*Id.*) Doe alleges he was tested on the material without catch-up time and was accused of plagiarism. (*Id.*) Doe alleges "Sage Ridge expelled Doe without any explanation." (*Id.*)

Gardner continued his employment with the school despite his discomfort with the allegedly racially motivated negative treatment of Doe. (*Id.*) Gardner alleges his accommodation was revoked by Dr. Hovenic when Dr. Hovenic informed Gardner he needed to be on-campus more often, even though his office was given to someone else, and Gardner needed to complete daily dialysis. (*Id.* at 10-11.) On December 12, 2023, Gardner alleges Dr. Hovenic made the following remark to Gardner: "I don't know what black people want to be called: Black, Afro American, Colored." (*Id.* at 11.) Gardner states this comment made him feel "extremely uncomfortable and inferior, especially as it took place after Sage Ridge's discriminatory treatment of DOE." (*Id.*)

On March 5, 2024, Gardner was called into a meeting with Dr. Hovenic who criticized Gardner's absence from school and provided Gardner with a termination letter dated February 29, 2024. (*Id.*). Gardner was informed that his last day of employment would be April 15, 2024. (*Id.*) Gardner alleges the termination letter included an employment contract between Sage Ridge and Gardner but the contract in the letter was not the actual contract agreed between the parties because it was "suspiciously missing the language that included a monetary buyout should Gardner be terminated "'without

cause.'" (*Id.*) Gardner alleges that upon notice to Dr. Hovenic, he received copies of the actual contract between the parties. (*Id.*)

On July 18, 2024, Gardner filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 1-1.) On July 19, 2024, Gardner's counsel received a Right-to-Sue letter. (*Id.*)

After obtaining the Right-to-Sue letter, Plaintiffs initiated the present suit against Sage Ridge. In the Complaint, Sage Ridge alleges the following eight causes of action: (1) "Violation of Title IX" – Plaintiff DOE; (2) "Violation of Title VI" – Plaintiff DOE; (3) "Violation of Title VI" – Plaintiff Gardner; (4) "Violation of Title VII" – Plaintiff Gardner; (5) "Violation of the ADA – Plaintiff Gardner; (6) "Violation of Nevada Statutory Protections"– Plaintiff Gardner; (7) Intentional Infliction of Emotional Distress – Plaintiff DOE; and (8) Intentional Infliction of Emotional Distress – Plaintiff Gardner. (ECF No. 1.) On October 10, 2024, Sage Ridge moved to dismiss all eight causes of action. (ECF No. 9.) Plaintiffs opposed the motion, (ECF No. 15), and Sage Ridge replied, (ECF No. 16).

## II.    LEGAL STANDARD

### A.    Rules 8 and 10

A complaint must contain "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A district court has the power to dismiss a complaint when a plaintiff fails to comply with Rule 8. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981). If the factual elements of a cause of action are not organized into a short and plain statement of a particular claim, the court may dismiss for failure to comply with Rule 8. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640 (9th Cir. 1988). Under Rule 8, a plaintiff may not allege extraneous facts that are not part of the factual basis for a particular claim. *See Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (recognizing that Rule 8 is violated when a plaintiff pleads too much).

Rule 10 provides that a "party must state its claims or defenses in numbered

paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." Fed. R. Civ. P. 10(b). In *Bautista v. L.A. County*, the Ninth Circuit held that the district court properly exercised its discretion of dismissing a complaint for failing to comply with Rule 10 by separating counts where multiple claims were alleged but abused its discretion when the complaint was dismissed with prejudice. *See* 216 F.3d 837, 841-42 (9th Cir. 2000).

### B.    Rule 12(b)(6)

Under Rule 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint challenged "by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but requires plaintiff to provide actual grounds for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Generally, a motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true, and "view[ed] . . . in the light most favorable to the" nonmoving party. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Ninth Circuit has found that two principles apply when deciding whether a complaint states a claim that can survive a 12(b)(6) motion. First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see Iqbal*, 556 U.S. at 678. Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, "must plausibly suggest an entitlement to relief." *Baca*, 652 F.3d at 1216.

Dismissal is proper only where there is no cognizable legal theory or an "absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). "'In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'" *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (emphasis in original) (quoting *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.1998)).

A court can grant a motion to dismiss for failure to state a claim with leave to amend. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1113 (9th Cir. 2013). The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a)(2). Usually, leave to amend is only denied when it is clear the deficiencies of the complaint cannot be cured by amendment. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Whatever the reason, the court must explain denying a party leave to amend. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). The Court may consider "[f]acts raised for the first time in the plaintiff's opposition papers . . . in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broam*, 320 F.3d at 1026 n.2.

## III.    DISCUSSION

### A.    Plaintiffs "Violation of" Title VI and Title IX Claims (First, Second, and Third Causes of Action)[2]

First, Sage Ridge argues Doe's Titles VI and IX claims and Gardner's Title VI claim should be dismissed because Titles VI and IX do not apply to Sage Ridge. (ECF No. 9 at 9-14.) In the Complaint, Plaintiffs assert that Titles VI and IX mandate a duty to protect

---

[2]    In various portions of the Complaint, Plaintiffs note broad statutory authority that is distinct from the alleged title violation. To the Court's best understanding, Plaintiffs allege violations of Title VI under the Education Amendments of 1972 and Title IX under the Civil Rights Act of 1964 and the Court references as such.

discriminatory conduct based on sex and race. (ECF No. 1 at 12-16.) They allege because Sage Ridge "receives federal funding in the form of tax exemptions," Sage Ridge is obligated to comply with Titles VI and IX. (ECF No. 15 at 6-8.) Sage Ridge disagrees with Plaintiffs, arguing tax-exemption status is distinct from the acceptance of federal funds and does not subject Sage Ridge to Titles VI and IX. (ECF No. 16 at 4-6.)

In their Opposition, Plaintiffs provide new facts related to federal loans that Sage Ridge received during the COVID-19 Pandemic and argue such funding subjects Sage Ridge to Titles VI and IX. (ECF No. 15 at 4-6.) However, the Court cannot consider these facts as they were not provided in the complaint. *See Broam*, 320 F.3d at 1026 n.2 ("'[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'"). The Court's determination of a Rule 12(b)(6) motion is limited to the "four corners" of the complaint. *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

Considering that the parties raise an open question of law as to whether tax-exempt status alone constitutes federal financial assistance for the purposes of Titles VI and IX[3] and plaintiffs allege new facts in their Opposition that the Court cannot consider, the Court declines to address the issue at this time. Rather, the Court grants Sage Ridge's motion to dismiss as to the first three causes of action, without prejudice. However, due to the requirement that the Court "freely grant" leave to amend in situations such as these, Plaintiffs are granted leave to amend to cure the deficiencies as to whether Titles VI and IX apply to Sage Ridge. *See Broam*, 320 F.3d at 1026 n.2.

///

---

[3]    Title VI of the Civil Rights Act of 1964 applies to "any program or activity receiving Federal financial assistance." Pub. L. No. 88-352, § 601, 78 Stat. 252 (codified at 42 U.S.C. § 2000d). Title IX of the Education Amendments of 1972 applies to "any education program or activity receiving Federal financial assistance . . . ." Pub. L. No. 92–318, § 901(a), 86 Stat. 235 (codified at 20 U.S.C. § 1681(a)). "The Ninth Circuit has not yet addressed whether tax-exempt status confers 'federal financial assistance' . . . ." *E.H. by & through Herrera v. Valley Christian Acad.*, 616 F. Supp. 3d 1040, 1050 (C.D. Cal. 2022) (finding that a claim under Title IX was pled because the Defendants had tax-exempt status and did receive PPP funding).

1    **B.    Gardner's "Violation of Title VII" Claim (Fourth Cause of Action)**

2    Next, Sage Ridge argues that Gardner Title VII claim is "ripe for dismissal" because

3    Gardner has not adequately pled a claim of race discrimination-based theories of on a

4    hostile work environment, disparate-treatment, or retaliation. (ECF No. 9 at 14-17.) In the

5    Complaint, Gardner alleges a "Violation of Title VII", but does not specify what aspect of

6    Title VII as the basis of the alleged violation. (*See* ECF No. 1 at 16-17.) Gardner uses

7    terms such as "malice and/or reckless indifference," "discrimination . . . due to his race,"

8    "negligence and deliberate indifference" and "retaliation," and broadly labels the cause of

9    action as a "Violation of Title VII – 20 U.S.C. § 1681 Et. Seq."[4] (*Id.* at 16-17.) In the

10    Opposition, Gardner defends the pleading of the fourth cause of action as proper claims

11    of race-discrimination, hostile-work environment, and retaliation. (ECF No. 15 at 14-15.)

12    It is difficult for the Court to discern whether Gardner has alleged a plausible claim

13    for relief because numerous Title VII allegations are merely lumped together into one

14    cause of action. *See Swafford v. Int'l Bus. Machines Corp.*, 383 F. Supp. 3d 916, 932

15    (N.D. Cal. 2019) ("Not only is the title of the claim incomplete because it fails to mention

16    the [correct statute], but also lumping all of these claims together into one cause of action

17    is improper."); *Hayek v. HCAL, LLC*, No. 11-cv-608, 2011 WL 6819075, at *4 (S.D. Cal.

18    Nov. 17, 2011) ("[W]hen the pleading reflects a jumble of legal causes of actions and

19    theories that fails to give defendants fair notice of what the plaintiff's claims actually are

20    and the grounds upon which they rests, the complaint does not meet the standards of

21    Rules 8 or 12."). The Court's reading of the fourth cause of action leads to the conclusion

22    that "Plaintiff's Title VII cause of action includes multiple claims each requiring different

23    elements, defenses, discovery and bases of judgment." *See Larios v. United States Navy*,

24    No. 21-cv-1947-GPC-MDD, 2022 WL 20717421, at *4 (S.D. Cal. July 29, 2022). The

25

---

26    [4]    Gardner cites 20 U.S.C. § 1681 *et seq*. as the statutory authority for the basis of
his Title VII cause of action. (ECF No. 1 at 16.) However, 20 U.S.C. § 1681 was enacted
27    by Title IV of the Education Amendments of 1972. *See Gebser v. Lago Vista Indep. Sch.
Dist.*, 524 U.S. 274, 277 (1998). Employment discrimination law under Title VII of the Civil
28    Rights Act of 1964 is codified at 42 U.S.C. § 2000 *et seq*. and includes various and distinct
causes of action.

Court finds that Gardner has violated Rules 8 and 10 by combining together multiple claims into one cause of action. *Motallebi v. Bank of Am. Corp.*, No. 20-cv-4618-DSF, 2020 WL 13327502, at *3 (C.D. Cal. July 2, 2020) ("Combining separate legal claims under one cause of action is improper under Rule 8.")

Accordingly, Gardner has not sufficiently pled a plausible claim for relief within his fourth cause of action and the Court again grants dismissal without prejudice and with leave to amend. *See Cafasso, U.S. ex rel.*, 637 F.3d at 1058-59; *Bautista*, 216 F.3d at 841-42. If Gardner chooses to file an amended complaint, he is reminded that he must separately state his claims as distinct causes of action instead of grouping them together into one overtly broad cause of action. In addition, any amended complaint must allege specific causes of action, as opposed to identifying broad swaths of the federal code that contain multiple causes of action and must plead facts making such claims plausible, not simply recite the elements of a claim. *See Iqbal*, 556 U.S. at 678.

### C.    Gardner's "Violation of the ADA" Claim (Fifth Cause of Action)

Next, Sage Ridges argues Gardner's disability discrimination claim must be dismissed. (ECF No. 9 at 17.) Gardner's fifth cause of action alleges a violation of the Americans with Disabilities Act ("ADA") on the part of Sage Ridge. (ECF No. 1 at 18-19.) He alleges he is disabled due to kidney failure and has to work from home in order to obtain dialysis on a daily basis. (*Id.*) He alleges Sage Ridge was aware of the disability and initially accommodated him by permitted him to work mostly remotely but later took adverse action and retaliated by revoking his accommodating and ultimately terminating his employment at Sage Ridge. (*Id.*) Sage Ridge argues Gardner failed to demonstrate he was "qualified" under the ADA such that he was entitled to the statute's protections. (ECF No. 9 at 17-18.) Sage Ridge further argues Gardner has not pled sufficient facts to sustain a claim of discrimination under either a "failure-to-accommodate" theory or retaliation. (*Id.* at 17-19.)

Again, the Court is unable to determine what specific cause of action Gardner seeks to bring under the ADA. Gardner asserts a "Violation of the ADA" and cites broad,

albeit incorrect, statutory authority.[5] (ECF No. 1 at 18.) Gardner does allege some facts as to disability and accommodation but mixes the elements of claims under a failure-to-accommodate theory and retaliation. (*See id.* at 18-19.) For example, he alleges he was "retaliated against" for "complaining" about the revoked accommodation while also asserting Sage Ridge was "no longer accommodating" his alleged disability. (*Id.*) Even taking these allegations as true, they go to elements of distinct causes of action. The inclusion of facts to support distinct claims within one cause of action provides grounds for the Court to dismiss this cause of action. *See Cafasso, U.S. ex rel.*, 637 F.3d at 1058-59; *Bautista*, 216 F.3d at 841-42.

Thus, the Court agrees with Defendants that Gardner has not sufficiently pled a claim for relief under the ADA and grants dismissal without prejudice with leave to amend. Here again, however, any amended complaint must allege particular causes of action, as opposed to identifying the ADA that contains multiple causes of action and must plead facts making such claims plausible, not simply recite the elements of ADA claims. *See Iqbal*, 556 U.S. at 678.

### D.    Gardner's "Nevada Statutory Protections" Claim (Sixth Cause of Action)

Next, Sage Ridge argues Gardner has not adequately pled a claim for relief under NRS 613. (ECF No. 9 at 19-20.) Gardner asserts claims of retaliation and discrimination based on race, color, and disability. (ECF No. 1 at 19-20.) Claims of race and disability discrimination and retaliation under NRS 613 are evaluated under the same standards as the parallel federal statutes. *See Campos v. Town of Pahrump*, 274 F. Supp. 3d 1106, 1116 (D. Nev. 2017) ("The Nevada Supreme Court has found that Nevada's anti-retaliation statute tracks Title VII under federal law."); *Hall v. Prestige Travel & Cruises*, No. 2:20-CV-772-JCM, 2021 WL 12300361, at *2 (D. Nev. Dec. 10, 2021) ("[T]he court applies the ADA approach to [Plaintiff's] discrimination claim under NRS 613.330 . . . .");

---

[5]    Gardner cites 20 U.S.C. § 1681 *et seq.* as the statutory authority permitting his cause of action under the ADA. (ECF No. 1 at 18.) The ADA is codified 42 U.S.C. § 12101 *et seq.* and includes various and distinct causes of action.

*Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases."). Both parties incorporate their arguments for and against dismissal of the first five causes of action to the sixth. (ECF Nos 1. at 19-20; 9 at 19-20.)

Here, the Court dismisses the sixth cause of action for the same reasons it dismisses the fourth and fifth cause of action. By incorporating his federal claims into his state claim, Gardner once again lumps together multiple claims under one cause of action. (ECF No. 1 at 20.) Gardner explicitly states multiple grounds of discrimination "race, color, and/or disability" within one cause of action and uses terms such as "discriminatory practice" and "retaliation" that allude to the elements of various distinct claims. (*Id.*) Without clarity as to what distinct claims of discrimination and retaliation are being raised and what facts support each independent claim, the Court finds Gardner has not sufficiently pled a claim for relief under NRS 613. *See Cafasso, U.S. ex rel.*, 637 F.3d at 1058-59; *Bautista*, 216 F.3d at 841-42.

Thus, the Court grants Sage Ridge's motion to dismiss without prejudice as to the sixth cause of action with leave to amend. If Gardner is again reminded that if he chooses to amend his complaint with this claim, he must plead facts to sufficient to support claims of race and disability discrimination and retaliation under state and federal law and he must follow Rules 8 and 10 and identify each claim as a distinct cause of action. *See generally Kennedy v. UMC Univ. Med. Ctr.*, 203 F. Supp. 3d 1100 (D. Nev. 2016).

### E.    Plaintiffs' Claims of Intentional Infliction of Emotional Distress (Seventh and Eighth Causes of Action)

Finally, Sage Ridge argues Gardner and Doe's seventh and eighth causes of action asserting intentional infliction of emotional distress are inadequately pled. (ECF No. 9 at 20.)

To state an intentional infliction of emotional distress claim under Nevada law, the plaintiff must allege (1) the defendant engaged in "extreme and outrageous conduct with

either the intention of, or reckless disregard for, causing emotional distress," (2) the plaintiff "suffered severe or extreme emotional distress," and (3) "actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 625 P.2d 90, 91-92 (1981); *see Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1029 (D. Nev. 2013). "Extreme and outrageous conduct is conduct which is 'outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community.'" *Okeke*, 927 F. Supp. 2d at 1029 (quoting *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (1998). "General physical or emotional discomfort is insufficient to demonstrate severe emotional distress—a plaintiff must allege such 'serious emotional distress' that it 'results in physical symptoms.'" *Evans v. Hawes*, 718 F. Supp. 3d 1351, 1373 (D. Nev. 2024) (quoting *Chowdhry v. NLVH Inc.*, 851 P.2d 459, 482 (1993)).

Here, Sage Ridge argues the alleged conduct is not extreme and outrageous but mere, "insults, indignities, threats, annoyances, or petty oppressions." (ECF No. 9 at 21.) Gardner and Doe allege that the conduct by Sage Ridge students and staff was extreme and outrageous. (ECF No. 1 at 20-22.) Plaintiffs allege they were forced to apologize to a room full of white students and parents who falsely accused Doe and Gardner for making them feel unsafe and uncomfortable. (*Id.*) Doe alleges he was further subject to extreme and outrageous conduct based on actions of Sage Ridge students and teachers such as accusing him of displaying gang signs, segregating him from other students during a field trip, suspending him because of the false accusations, and expulsion without cause. (*Id.* at 20.) Gardner alleges Sage Ridge leadership made discriminatory comments towards him such as an alleged racial quota at the school and "I don't know what black people want to be called: Black, Afro American, Colored." (*Id.* at 21.)

Assuming without deciding that Plaintiffs have alleged conduct that is "extreme and outrageous," the Court finds Plaintiffs have not sufficiently pled distress suffered that is "so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (citing *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (1983)). Plaintiffs do not provide facts other than mere

restatements of the elements to demonstrate that the distress suffered is "utterly intolerable." *Id.*; *see Evans*, 718 F. Supp. 3d at 1374 ("[A] plaintiff must describe this element in more detail than just vaguely repeating that she suffered emotional distress.") (citing *Chowdhry*, 851 P.2d at 462). Simply stating the key terms of the elements of a claim is not sufficient to allege a claim of intentional infliction of emotional distress. *See Iqbal*, 556 U.S. at 678 (The Court is not required to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .").

Thus, Plaintiffs' seventh and eighth causes of actions are dismissed without prejudice with leave to amend to cure the deficiencies in relation to the intentional infliction of emotional distress claims.

## IV.    CONCLUSION

Accordingly, **IT IS THEREFORED ORDERED** that Sage Ridge's Motion to Dismiss, (ECF No. 9), is **GRANTED**. Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**.

If Plaintiffs decide to file an amended complaint—to the extent they are able to cure the deficiencies discussed herein—they must do so within 30 days of the date of entry of this order. Plaintiffs' failure to file an amended complaint within 30 days will result in the dismissal of their claims with prejudice.

**IT IS SO ORDERED.**

**DATED**: February 4, 2025.

_____
**UNITED STATES MAGISTRATE JUDGE**